review is appropriate. The second issue is whether this injury could be considered one that arose out of the employment. As it concerns the first issue, it is our position that there are not disputed facts, that the testimony of the petitioner is clear and unequivocal, and that these facts are only capable of one inference, and that is, this worker moved to the left. And that would mean that this is a de novo review of, a de novo review and as such, we are not bound by the Commission's decision. I believe the Circuit Court was in error when they decided this case on the manifest weight of the evidence. I believe with that said, that when you review the record and you find that this individual stood behind a press operation machine that made a felt tip gasket that was used between engines that weighed between ounces or three pounds, that what he did was no more than what was cited in the brief, which is simply move to the left. For the reasons discussed in my brief with the citations to various appellate authority, merely moving to the left without more does not arise out of employment. The arbitrator specifically found that the act, quote, the act of twisting was required in performing his duties as a machine operator and, quote, the act of twisting while operating the machine would not have existed but for his employment. The mere act of twisting without more, Your Honor, is no more than what we all experience in day in and day out living. When the petitioner had an opportunity to expand about how it was that he was confined, constrained, restricted, or had to behave in some unusual manner, not only on direct examination was he unable to, other than say, I moved to the left, on cross-examination. He had to show that he had to behave in some unusual manner? Yes. Because as the testimony developed, you saw that he could do this job of simply removing gaskets by either standing down or sitting them. And they are incidental weights. And as such, merely moving to the left without more, Your Honor, does not arise out of your employment. It does not. This is a specific accident. They are not alleging a repetitive trauma injury in this case. And to find this such, it would change the whole theory of recovery and the testimony. So you're saying the arbitrator is really adopting the positional risk argument, right? He most certainly did adopt the positional risk argument in finding this case compensable. And what we can rely on, Your Honors, is the testimony taken of Dr. Treister, who was the treating orthopedic physician who performed the laminectomy. Because we took his evidence deposition. And if I quote from the record, page 254, here's some questioning and answering. It's brief, but it's to the point that you're making. Question. The records don't reflect what Mr. Paz was doing other than turning to the left. Is that right? Answer, yes, that's true. Question. And what do you have, and do you have any independent knowledge of what Mr. Paz was doing on September 13th? Answer, no. Question. So all you know, do you have any recollection of what Mr. Paz told you he was doing on September 13th? Answer, basically, in terms of the line of questioning, in terms of somebody twisting their back or hurting a disc or something like that, they could be picking up a paper clip off the floor. It doesn't have to be a high kinetic energy. It does not have to be a heavy weightlifting injury. In fact, as a spine surgeon, this is what I see, but it is true, I don't know. Question. In fact, it does not require any weightlifting. It does not even require picking up a paper clip to herniate a disc. Does it? Answer, no. This is the whole point. If somebody is on the job and they herniate a disc, whether they're picking their nose or picking up a paper clip off the floor or picking up a file or lifting up a hundred-pound object, it's still an injury on the job. So, to me as an orthopedic surgeon, it does not make much difference, but that is true. Question. Well, in your phrase, injury on the job, is it merely a reference to the location of where he was when an injury happened, right? Answer, right. Positional risk doctor. This is on page 242, I think that 255 of the record, the evidence deposition of Dr. Treason. So are you saying if there is a physical motion that is required in connection with employment that's incidental and required to, that worker could never recover under your theory? No, absolutely. I beg to respectfully disagree. You certainly may, if the testimony is such that this man was in a constraint, confined, restricted manner of some way requiring it to be exposed to a greater degree of risk or harm than the general public. There is nothing in this record, Your Honor, that provides any inkling of what he was doing other than his testimony on page 58 of direct exam, I moved to the left. And then on pages 86, 87, 88, and 89, when sometimes we do things under cross-examination, then we take a chance because we don't have discovery. And we, on cross-examination, gave him the out, gave him the opportunity to talk about how he was exposed to a greater degree of risk or harm than the general public. And what did he say in those pages? Well, does the general public, I mean, for other, here's another example. If somebody's trying to put things on a shelf in a stockroom and they've got to reach up and do that, and they do that all day, and then something pops and they have an injury, isn't that positional risk because don't we all day long, people, you know, reach up in cabinets and things? You, well, in large measure, it must go to the specific injury. I would say to you that pushing something up on the shelf, Your Honor, and claiming a cervical spine injury, one does not flow mechanically from the other. A rotator cuff injury, yes. Is it going to be what, a specific accident or not? It goes to the medical diagnosis that only that question could be answered in. Does it occur in the course of your employment, time, place, and manner? I can see that, of course, Mr. Paz was present at a visit. Let's deal with the record. You were just about ready to answer the question of what he said when you opened up the cross-exam, because we've got to deal with this example here, this record. You were just saying before the previous question that you on cross- I cross-examined the issue on pages 86, 87, 88, and 89, Your Honor, when we said, be specific, what do you mean moved? What do you mean twisted? It doesn't answer it. He can't explain it. He says, the words are muddled, and it's not a confused testimony. I mean, there's no translation. Okay. So basically what you're saying is the status of this record is just a positional risk ruling because there's no evidence here that this gentleman was exposed to a greater risk than that of the general public, because the general public turns to the left. Correct. Yes, Your Honor. And with that said, it is mere conjecture and speculation as to what you're going to do to determine that he was exposed to a greater degree of risk or harm. Again, if he says I was tucked under the desk, if I was constrained, if there's that kind of testimony- How about if he testifies that, and I'm not sure if this is punch press, but that basically I take it off the platform and I do a thousand of those a day, and I'm instructed to put them in a stack to the left of me on a card. Would that get closer in your mind? In my mind, would it be certainly closer, but the question then becomes is what is the medical condition? In this case, it's a herniated disc to the lumbar spine, and that means that there has to be some kinetic energy. And as the doctor said, it doesn't- Because you're falling back on the fact that we don't have a repetitive trauma, my hypothetical would have said, well, that goes to repetitive trauma, a thousand pieces. Yes, it does. But you're saying this was presented as a specific injury case, and we have to have more, because all of us turn to the left. I turn to the left, you turn to the left- Yes. Counsel turns to the left. And because it's a de novo review, it is a de novo review, but we have to then go back and say we have to create liability based upon what we assume might have happened. We have to speculate. We have to engage in conjecture. And to do that is impermissible. I am submitting that based upon the record made in this case, there is not a merit by a preponderance of the credible evidence. It doesn't exist. What did the commission say is the reason why they found it to be compensable? They just merely affirmed it. They changed the spelling of one of our witnesses, the one who testified. What did the arbitrator say? The arbitrator said, Justice, what's the question again? What did they find? What did the arbitrator say? That this case, but for his work, wouldn't have been behind the machine, and therefore it's compensable. By the way, where in your appendix to your brief will I find the arbitrator's decision and the commission's decision? Don't bother looking. You won't find it in ours. I believe it is. Did you thank your respondent for supplying us with what you were supposed to provide us with? I was just going to turn to that my learned opposing counsel, Mr. Likas, included it in his. Yes. He did. You know those Supreme Court rules aren't advisory suggestions. As I sat here and listened this morning, I certainly understand that and respect that. Let's hope in the future we won't get appendixes like this. Understood. Thank you. So with that said, I believe that the record, because de novo applies, means that the burden of proof has been not met in this case, and the commission's decision and the circuit court judge's decision needs to be reversed. I'll save the balance of time, please, for rebuttal. Counsel, please. Good morning, Your Honors. Mr. Slavin, may it please the Court. Peter Likas on behalf of the FLE, Martin Paz. Counsel goes to great lengths to argue that the facts in this case are undisputed. Well, if you look at the arbitration of this matter back in 2001, the facts are not undisputed. So that would mean that you're inevitably moving to the point you do not agree with your learned counsel if this is a de novo review. Is that correct? That's correct, Your Honor. I mean, they brought in a witness, Connie Loper, the supervisor, for the specific purpose to contradict the testimony of my client, Martin Paz. She went out of her way to say that the job didn't require him to stand, the job didn't require him to pivot to his left or pivot to his right, completely contrary to what Mr. Paz testified to. My client testified to, on September 13th, 1999, his job was to remove machine parts from his machine and twist to his left and place them on a work table. He did this all day long. This was part of his job. Did he use the word twist? He did use the word twist, Your Honor. All right. Because opposed to counsel, somebody saying moving, you know, there's a little difference between simply moving and twisting. Correct. No, he testified that he worked the machine, which was in front of him. The machine would kick out machine parts and dies. His job was to take these parts, pivot or twist to his left, and place them on his work table. This is what he did all day long. He testified while doing this, he noticed a sharp pain in his low back. Immediately notified his supervisor, Connie Loper. Before I get into the facts, though, do you have any further argument as to why this is not de novo review? Because obviously that's a very significant issue, the standard of review here. Manifests sway, obviously, being deferential to the commission. So what else do you have to say as to why this is not de novo review? Your Honor, it's not de novo, I believe, because it does not – the facts don't fall in line with the cases that counsel cites in his brief. All of the cases that he cites talk about personal risks. A gentleman who drops a pen on the floor, goes down to pick it up and blows out his knee. A police officer sitting at his chair hearing a noise and moving his neck to the left and his neck cracking. The Caterpillar case, somebody crossing the street and slipping on a curb. Those cases have nothing to do with this. This gentleman was clearly doing what he does. He's a machine operator. I don't operate a machine. None of you gentlemen operate a machine. We're not exposed to taking machine parts out of a machine and twisting to the left on a continuous basis. It's clearly a question of fact. So it's not de novo review because the nature of what he does and how he twists and turns is sort of disputed? Is that what you're saying? That's correct. It was disputed, Your Honor. I mean, look at the – look at the testimony of Connie Loper. She testified that he didn't have to stand. She testified that the job required minimum lifting, where my client testified he was required to lift 30 to 40 pounds. The other cases counsel cites relate to people that have preexisting degenerative conditions. Well, you said something that might be significant. What's this 30 or 40 pounds? How does this come into the mix here? Well, when I asked him what the job entailed, he basically said that the job entailed lifting machine parts up to 30 to 40 pounds. So is he holding these 30 to 40 pound machine parts in his arms when he turns? No, he's not, Your Honor. Okay. In this specific case, he testified that he took a head gasket out of the machine that weighed approximately 3 pounds, twisted to his left to place it on his work table and noticed pain in his low back. All right. What this case comes down to, and counsel makes a superficially appealing argument, is, look, as you know, to be compensable, this has to be something that the average person – the average person would be doing at any given point in time. During the course of the day, everybody, if they're mobile and ambulatory and moving, are going to twist once in a while. So he's saying, well, wait a minute. This is what everybody does. Why should this be compensable, simply turning to the side? Because of the fact he's a machine operator, Your Honor. This is what he does. This is part of his job. The job requires him to remove these gaskets and to twist on a continuous basis to his left. I don't have an answer because we're in positional risk. Job might require somebody to walk down the hall, too. Take a file down the hall. There's got to be something more, doesn't it? I mean, you're saying, well, because he's classified as a machine operator. Well, that's what he does. There's not – I'm not aware of medical evidence that you have to be lifting something – Well, I think what Dr. Treaser was trying to say is you don't have to be lifting 100 pounds to blow out a disc. You can be lifting a pound, two pounds, three pounds. So that was part of the incident, the fact that he had this gasket in his hand, although they argued that he didn't. They tried to establish that at trial, that he wasn't lifting a gasket, that he just twisted to the left. Well, on your side of the case, was there any evidence admitted or sought to be admitted regarding the weight of this gasket? Yes. He testified, Your Honor, that the gasket weighed about approximately three pounds. Three pounds. All right. So that's part of the facts. It wasn't – Another guy is towing a three pounds in their hand? Is that part of the argument? It is, Your Honor. It's part of the mechanism of the injury. It's not a situation where he just twisted to the left or he heard a siren go off and he twisted to the left. This is what he does. He was lifting a machine part, and in order to fulfill his job, he had to twist to the left to place this on a table, which was adjacent to his machine. So that's why I believe it's not the positional risk doctrine. Like I said, I don't – What miracle do we have there that talks about this weight in combination with turning to the left? He cites a doctor who basically just says, oh, if it's in the course of, you know, but you've got to have something rising out of, don't you? Well, you have the petitioner's testimony. You have records from other doctors, Dr. Sklomberg, where he gave a history of right low back pain after twisting, placing parts at Federal Mogul. He saw Dr. Mejia, gave him a consistent history. While operating the machine, twisted with a machine part, felt severe discomfort in his back. I think what Dr. Treister was just saying was the weight is insignificant with respect to the mechanism of developing a herniated disc. And I don't know if any of you know Dr. Treister. He at times gets a little bit heated at depositions and can sometimes be out and out rude. I didn't take that specific deposition. I was another attorney in the office. But the important thing is that he was lifting something. That's important. That's very important factually. It's not a situation where he just twisted to the left or to the right. He was, in the course of his employment, he was picking a gasket out of the machine, placing it to the left, twisting to the left when he noticed the pain in his low back. That's not something that I do or any of us do. So I don't know how you can argue that it didn't expose him to greater risk than that of the general public. It's not like the Caterpillar case where we all transverse curbs. It's different. The facts are different. The other cases counsel cite talk about people that have severe degenerative conditions where the doctor testified that any simple normal activity would have caused the injury. That's not the case here. Yes, he did injure himself in 1990. He had a low back injury. He testified that he treated through 1992, that he had been released from his doctor. From 1992 to 1999, he worked as a machine operator. He testified that he didn't have any significant problems with his back. He worked overtime. So this isn't a situation where he's got a horrendous degenerative condition that no matter what he would have done would have blew out a disc. The evidence doesn't support that. With respect to some of the other issues in the case, notice, notified his supervisor that they had the accident. In terms of the medical, there was about $3,800 awarded. They did not introduce any contrary medical evidence that the treatment was unreasonable or unnecessary. With respect to causation, they don't have a doctor that says it's not causally related. In the brief, Dr. Treister testified via deposition that it was causally related. Once again, I'd like to point out to you that these were not undisputed facts. This case was hotly contested. The supervisor testified at length. They talk about her testimony in their briefs, that it's different than what the petitioner didn't have to stand. He didn't have to do this. He didn't have to do that. It was not simple, normal activity. This is not a personal risk case. And there's no evidence that he had a severe preexisting condition that any activity would have caused the rupture of his disc at L3-4. Based upon the entire record, I would ask this Court to affirm the prior decisions. Thank you, counsel. Rebuttal, please. Yes, please. Your Honors, because the de novo standard applies in this case, I submit that when you go to the record, page 59, when under direct examination, the claimant testifies, when I make a turn, I felt a sharp pain in my back. Those words are sufficient to establish that there hasn't been testimony introduced that sufficient to support there is an injury that arose out of employment. I turn to my- Your initial point was well taken, I think. Is the worker in this case subjected to a risk greater than anyone else walking around in society? However, he's introduced an additional element. Does everyone in society walking around and turning in and of itself I don't think is a greater risk. What about if you've got some weight in your hand? Does everybody turn with a weight or asking with a weight? The answer is no, not everybody does. However, in this case, we're talking about either a 3-pound weight in their hand, which there is no medical causal connection opinion that under de novo review that you're scouring the record for to say, where is the medical causal connection that 3 pounds caused a herniated disc? I submit to you, you won't find it in this record. Or zero weight, which goes to your hypothetical question. It's not there. So we submit it was ounces. It could be 3 pounds. That's a controversy. That is not a question of fact because there's no medical causal connection here to put the hammer's head to the nail about that being a significant causal connection. Your position in arbitration was that he didn't have anything in his hands. Yes. So why was it significant at that time to make that distinction? It was not significant to make the distinction. What was significant in the testimony that the supervisor testified to, Your Honor, was that it was an open area, not constrained, not confined. And that what he told me was nothing in his hands. So is there a factual controversy between nothing and 3 pounds? I submit for purposes of a herniated disc, there is no difference to a lumbar spine. You have 3 pounds in your hand or nothing in your hand. That's not a medically significant fact. What about if you're moving 3 pounds 500 times a day? Well, then it's repetitive trauma. And then that's the theory. And then that theory has to be medically established. And I submit to you that it isn't on a de novo review. This is not a deferential standard. This case comes before you on it. It is not. And as such, I think that hypothetical is relevant, but not to the facts of this case. With that, I submit that this record stands as one in line with other cases previously highlighted in our briefs that says that this matter needs to be reversed. Thank you for your time and consideration. The Court will take the matter under advisement for disposition.